OPINION OF THE COURT
Anthony W. Paradiso, J.
*776 Plaintiff moves pursuant to CPLR 2221 (d) and (e) to reargue and renew the prior order of this court dated May 23, 2007. The defendant opposes the motion. For the reasons that follow, the motion is granted. Upon reconsideration, the court adheres to its original determination.
In moving to reargue pursuant to CPLR 2221 (d), the plaintiff asserts that the court overlooked or misapprehended matters of law and fact in granting the relief requested by the defendant. Specifically, the plaintiff argues that Allstate’s motion was, in essence, one to strike the notice of trial which was not supported by the requisite affidavit detailing the need for additional discovery required by section 212.17 (d) of the Uniform Civil Rules for the District Courts (22 NYCRR 212.17 [d]). Plaintiff insists that Allstate did not demonstrate the unexpected or unanticipated circumstances that necessitated the late discovery. In this regard, plaintiff points out that counsel for the defendant examined plaintiffs principal, Dr. Robert Hard, on five different occasions during the period from October 2004 through July 2005, and waited until August 2007 to make its motion to amend, consolidate and compel additional discovery.
The court is not persuaded by the plaintiffs arguments. “A note of issue should be vacated when it is based upon a certificate of readiness that contains erroneous facts, such as that discovery has been completed” (Drapaniotis v 36-08 33rd St. Corp., 288 AD2d 254 [2d Dept 2001]). Such a misstatement renders a notice of trial “a nullity” (see Gregory v Ford Motor Credit Co., 298 AD2d 496, 497 [2d Dept 2002]). Here, a review of the transcripts of Dr. Hard’s examination under oath (EUO) reveals that defendant’s counsel requested the documents sought in the motion under review on numerous occasions during the course of the examination. The documents requested included plaintiffs agreement with Bayside Management Inc. (at 70), corporate tax returns (at 51, 148), facility leases (at 215), and banking records (at 314). Counsel for the defendant renewed his demand for these documents on numerous occasions during the course of Dr. Hard’s examination (at 177, 266, 363). Despite these outstanding demands, the plaintiff filed its notice of trial on August 18, 2005, just one month after the last demand for the documents, and six months after the Court of Appeals decided State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]), which clearly rendered the material sought relevant to Allstate’s defense of fraudulent incorporation (see Midwood Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co., 14 *777 Misc 3d 131[A], 2007 NY Slip Op 50052[U] [App Term, 2d Dept 2007]).
The plaintiff is mistaken, if not disingenuous, in its position that the defendant never requested these items in writing. The EUO notice sent to Dr. Hard on May 26, 2004 specifically required him to produce all documents relating to the plaintiffs ownership, corporate structure, and affiliation with any consulting, management, billing or collection entities, as well as tax returns, banking documents, and leases. Indeed, plaintiffs attorney acknowledged this very fact in his affirmation in opposition to the original motion, which included the EUO notice and document request as exhibit C.
Accordingly, the court did not overlook or misapprehend any matters of fact or law when it, in effect, struck the plaintiffs notice of trial, allowed the defendant to amend its answer to assert a Mallela defense, and compelled the production of outstanding discovery relevant to that defense. Contrary to plaintiffs assertion, the moving affirmation of Allstate’s attorney on the original motion set forth sufficient allegations of fraud in the corporate form to justify the amendment and compel the discovery (see Bromer Med., P.C. v Chubb Indem. Ins. Co., 18 Misc 3d 138[A], 2008 NY Slip Op 50298[U] [App Term, 1st Dept 2008]).
The court is also convinced that it did not overlook or misapprehend any matters of fact or law in allowing the consolidation of all pending no-fault cases involving the same parties. A motion for consolidation is addressed to the sound discretion of the court, and absent substantial prejudice to the opposing party, is proper where there are common questions of law and fact (see RCN Constr. Corp. v Fleet Bank, N.A., 34 AD3d 776 [2d Dept 2006]). Here, it is evident that all of the no-fault matters pending between Eastern Medical and Allstate are subject to the same Mallela defense of fraudulent incorporation. If proven, the applicable law would require a dismissal of all pending actions.
Consolidation for the purpose of entertaining the Mallela defense certainly serves the interests of judicial economy and efficiency. Be that as it may, if Allstate is unable to prove its Mallela defense, then the court agrees with plaintiff that the consolidation of the pending no-fault actions becomes untenable as each is driven by unique facts arising from separate and distinct circumstances. Accordingly, the court takes this opportunity to clarify that the consolidation of the pending no-fault matters is for the sole purpose of determining the merits *778 of Allstate’s Mallela defense, and is without prejudice to a subsequent motion to sever the cases should that defense fail.
In moving to renew pursuant to CPLR 2221 (e), the plaintiff asserts that there has been a change in the law that would change the prior determination. Specifically, the plaintiff argues that the Appellate Division’s recent decision in Fair Price Med. Supply Corp. v Travelers Indem. Co. (42 AD3d 277 [2d Dept 2007]), “radically reshaped the landscape of fraud based defenses,” such that Allstate’s Mallela defense is untimely and therefore unavailable. The court concludes that the plaintiff is mistaken in its application of Fair Price to the facts at hand.
In Mallela, the Court of Appeals held that a medical provider is not entitled to recover first-party no-fault benefits under Insurance Department Regulations (11 NYCRR) § 65-3.16 (a) (12) if it is fraudulently incorporated. As in the present case, the insurer in Mallela alleged that the medical provider, while nominally owned by a physician, was actually operated by non-physicians in violation of New York’s licensing statutes. The Mallela court declared the regulation valid and held that “carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law[s]” (Mallela, 4 NY3d at 321).
On June 12, 2007, the Appellate Division, Second Department, decided Fair Price Med. Supply Corp. v Travelers Indem. Co. (42 AD3d 277 [2007]). That action involved an insurer’s attempt to deny a fraudulent claim for medical supplies almost two years after the 30-day pay or deny period mandated by Insurance Law § 5106 (a) had expired. The court found the fraud defense untimely.
In reaching this conclusion, the Appellate Division relied upon Court of Appeals precedents in Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co. (90 NY2d 274 [1997]) and Central Gen. Hosp. v Chubb Group of Ins. Cos. (90 NY2d 195 [1997]) to draw a distinction between defenses based on a lack of insurance coverage in the first instance and those based on policy exclusions. Acknowledging that the preclusion rule cannot be applied so as to create coverage where none otherwise exists, the court held that the fraud alleged in Fair Price did not go to the issue of coverage and thus required a timely denial. Summarizing the applicable law, the Appellate Division explained: “In determining whether compliance with the 30-day rule is required, the pertinent inquiry is whether the asserted defense is based on a lack of coverage. The kind of fraud scheme *779 involved — and whether there is any fraud scheme at all — is irrelevant” (Fair Price, 42 AD3d at 285).
Relying on the above pronouncement, the plaintiff asserts that Allstate’s allegations of fraud in the corporate form, even if true, should have been asserted in a timely denial. Since they were not, plaintiff insists that Allstate is precluded from raising such a fraud defense at this time. The problem with this argument is that it assumes the Court of Appeals was ignorant of its own precedent in Presbyterian and Central Gen. when it decided Mallela, and that the Fair Price court chose to somehow abrogate Mallela in its decision. The court rejects these unsupported assumptions.
It is evident that the appellate courts in Presbyterian, Central Gen. and Fair Price were dealing in large measure with contract interpretation — the extent to which policies of insurance covered certain situations, and the extent to which the insurers’ obligations under those policies were subject to applicable laws and regulations. In contrast, the Mallela court was not dealing with contract interpretation, or the interplay between policies of insurance and applicable laws and regulations. Rather, Mallela dealt strictly with statutory interpretation.
The question certified to the Court of Appeals in Mallela was whether insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims. The Mallela court was simply faced with the task of determining whether a rule promulgated by the Superintendent of Insurance (11 NYCRR 65-3.16 [a] [12]) was valid. The rule excluded payments made to fraudulently licensed providers from the meaning of “basic economic loss” as set forth in Insurance Law § 5102. Acknowledging that the rule set up a conflict between the prompt payment goals of the no-fault law on the one hand, and the antifraud goals embodied in the State’s licensing statutes on the other, the court unhesitatingly pronounced that the regulation was valid, and that “[w]here, as here, the Superintendent has properly crafted a rule within the scope of his authority, that rule has the force of law and represents the policy choice of this State” (Mallela, 4 NY3d at 321).
Significantly, in Mallela there was no contention that the medical services in question were unnecessary or improperly rendered, or that the insureds were otherwise ineligible for coverage. There was no suggestion that the payments were not otherwise required under the terms of the policies. The court *780 specifically noted as much. Even so, the Mallela court did not qualify the insurer’s right to deny payment to the fraudulently incorporated provider by requiring a timely denial. In this regard, it is instructive that the Mallela court quoted a relevant passage from its earlier decision in Matter of Medical Socy. of State of N.Y. v Serio (100 NY2d 854, 866 [2003]), which provided that the challenged regulations “create not a new category of exclusion, but rather merely a condition precedent with which all claimants must comply in order to receive benefits under the statute” (Mallela, 4 NY3d at 321 n 3 [emphasis added]).
This court is convinced that Fair Price did nothing to diminish an insurer’s right to assert a Mallela defense in appropriate circumstances, even after the 30-day pay or deny period of Insurance Law § 5106 (a) has expired. Such a defense is not predicated on a policy exclusion or the extent of coverage provided by a contract of insurance. Nor does it arise from the operation of an insurance policy within the context of the no-fault laws and regulations. A Mallela defense is not a policy-based defense at all, but rather a statutory defense that arises from a claimant’s failure to comply with applicable sections of the Business Corporation Law, Limited Liability Company Law and/or Education Law. It is a defense based on the claimant’s failure to satisfy a condition precedent to payment. It is not concerned with fraudulent acts that trigger policy exclusions or implicate policy coverage.
Thus, in Metroscan Imaging, P.C. v GEICO Ins. Co. (13 Misc 3d 35 [App Term, 2d Dept 2006]), the Appellate Term affirmed an order of the Civil Court which consolidated multiple no-fault actions and allowed the insurer to assert a Mallela defense in each. The court held that medical providers who fail to meet applicable licensing requirements are not entitled to no-fault reimbursement “since their authority to render professional services was obtained through fraudulent means” and possession of such authority is “a prerequisite to reimbursement” (id. at 38).
Likewise, in Midwood Acupuncture, P.C. v State Farm Mut. Auto. Ins. Co. (14 Misc 3d 131[A], 2007 NY Slip Op 50052[U] [App Term, 2d Dept 2007]), the Appellate Term reversed that portion of a Civil Court order which granted summary judgment to a medical provider, concluding that the insurer was entitled to discovery on the relevant issue of whether the medical provider was fraudulently incorporated (see Midwood at *1). Significantly, the court determined that a fraudulent incorpora *781 tion defense “is a nonwaivable defense and is therefore not subject to the 30-day preclusion rule” (id.). The court affirmed the lower court’s refusal to sever the unrelated actions, concluding that the fraudulent incorporation defense was “likely to raise common issues of law or fact” in all five claims (id. at *2).
The undersigned cited the Metroscan Imaging and Midwood Acupuncture decisions in support of the court’s prior order, and continues to believe that these cases control the matter under review. Significantly, at least one Appellate Term decision after Fair Price concluded that a Mallela defense “is not waived by the failure to assert it in a denial of claim form, nor is it precluded as a result of an untimely denial” (Multiquest, P.L.L.C. v Allstate Ins. Co., 17 Misc 3d 37, 39 [App Term, 2d Dept 2007] [citations omitted]).
Accordingly, upon review of its decision dated May 23, 2007, the court adheres to its original determination.